# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**TOTAL DISTRIBUTION, INC.,**
**Employer Below, Petitioner**

**FILED**

December 6, 2019
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 19-0089** (BOR Appeal No. 2053090)
(Claim Nos. 2017024849 & 2016012919)

**EXPRESS SERVICES, INC.,**
**Employer Below, Respondent**

**and**

**CHARLES PLANTZ,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Total Distribution, Inc., by Counsel Jeffrey B. Brannon, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Express Service, Inc., by Counsel Lisa Warner Hunter, filed a timely response.[1]

The issues on appeal are temporary total disability and medical benefits. The claims administrator denied authorization of a left shoulder arthroscopic rotator cuff repair on December 7, 2017. On February 23, 2018, it denied a reopening of the April 17, 2017, claim for temporary total disability benefits. The Office of Judges reversed the December 7, 2017, decision in its May 25, 2018, Order, and authorized the left shoulder surgery. The Office of Judges affirmed the February 23, 2018, decision finding that the request for temporary total disability benefits was made prematurely. The Order was affirmed by the Board of Review on January 2, 2019.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no

---

[1] The claimant, Mr. Plantz, did not file a response brief.

1

substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Plantz, a warehouse laborer, injured his left shoulder on September 3, 2015, while working for Express Services, Inc. An October 26, 2015, treatment note from MedExpress indicates Mr. Plantz was seen for a shoulder injury that he stated occurred four or five weeks prior while he was turning fifty-five gallon drums. He remained on full duty work with no restrictions. An Employees' and Physicians' Report of Injury was completed on October 26, 2015. The claims administrator held the claim compensable for left shoulder sprain/strain and authorized a left shoulder MRI on January 8, 2016. The MRI was performed on January 13, 2016, and showed bicipital tendinitis, findings suggestive of adhesive capsulitis, and mild acromioclavicular joint degenerative changes. It was noted that a rotator cuff tear was not evident.

Mr. Plantz sought treatment for the left shoulder injury from David Soulsby, M.D. A March 31, 2016, treatment note indicates physical therapy caused Mr. Plantz's pain to worsen. Dr. Soulsby recommended bicep and subacromial injections. On April 20, 2016, Dr. Soulsby noted positive impingement sign and acromioclavicular crepitation. Mr. Plantz was given a shoulder injection. On May 21, 2016, he reported that the injection provided no relief. Dr. Soulsby stated that the shoulder MRI showed a biceps tear, tendinitis, and a possible labral tear. He requested authorization of arthroscopic biceps tendonesis and/or labral tear repair. The surgery was authorized on July 18, 2016. Dr. Soulsby performed the surgery on August 17, 2016. His findings showed a 50% thickness tear of the biceps tendon and minor degenerative changes in the rotator cuff. Dr. Soulsby noted that there was no tear in the rotator cuff.

Mr. Plantz underwent physical therapy at MedCare Therapy from October to December of 2016. The treatment notes indicate his left shoulder pain improved. He still had some upper trapezius pain, but the physical therapist felt it was time for him to return to work. On December 8, 2016, Dr. Soulsby noted acromioclavicular joint crepitation and mildly positive impingement sign. Overall, however, he stated that Mr. Plantz's condition had improved and he was released to return to work. On January 13, 2017, it was noted that Mr. Plantz had completed physical therapy and returned to work. He continued to have moderate shoulder pain but reported that it was much improved when compared to his pre-surgery pain level. Dr. Soulsby found that he had reached maximum medical improvement and could return to normal activities with no restrictions.

Mary Murphy, M.D., performed an independent medical evaluation on February 6, 2017, in which she evaluated the left shoulder injury. She diagnosed biceps tendonitis, partial tear of the tendon of the long head of the left biceps muscle, and impingement syndrome. She found that Mr. Plantz had reached maximum medical improvement and assessed 6% impairment. Mr. Plantz was granted a 6% permanent partial disability award based on Dr. Murphy's evaluation.

On March 9, 2017, Mr. Plantz indicated to Dr. Soulsby that new left shoulder symptoms had developed. He stated that he felt popping and crackling in his shoulder and that he still had pain radiating down his shoulder blade. Dr. Soulsby found no crepitation, popping, or crackling on examination. An x-ray was taken and showed no acute injury. Dr. Soulsby stated that Mr. Plantz

was at maximum medical improvement and that there was no treatment he could offer for these new alleged symptoms.

Mr. Plantz sustained a second work-related injury to his left shoulder on April 17, 2017, while working for Total Distribution, Inc. Mr. Plantz sought treatment that day from Charleston Area Medical Center. An x-ray was taken and showed a history of tendon repair but was otherwise normal. The Employees' and Physicians' Report of Injury, completed that day, indicates Mr. Plantz injured his left shoulder while closing a container. He was diagnosed with left shoulder and upper arm pain. It was noted that he had a possible torn left bicep. He was to remain off of work until an MRI could be performed. The MRI was performed on April 25, 2017, and revealed a likely partial tear of the supraspinatus tendon superimposed on rotator cuff tendinopathy. There was also a suspected biceps tendon disruption or displacement with moderate degenerative changes of the acromioclavicular joint.

On April 27, 2017, Mr. Plantz returned to Dr. Soulsby. Dr. Soulsby opined in his treatment note that Mr. Plantz may have reaggravated his rotator cuff. He requested authorization of a corticosteroid injection and opined that Mr. Plantz should remain off of work until the injections were authorized. In a May 9, 2017, addendum, Dr. Soulsby noted that Mr. Plantz also had scapular pain, which could be from impingement. Mr. Plantz was treated by Shawn Cottrell, D.C., on April 28, 2017. Dr. Cottrell diagnosed strain of the muscle and tendon of the long head of the biceps in the left arm as well as sprain of thoracic ligaments. Mr. Plants had made modest improvement but still required additional care. Left shoulder corticosteroid injections were authorized on May 26, 2017. The April 17, 2017, injury was held compensable for left shoulder strain and temporary total benefits were granted on May 31, 2017.

On June 15, 2017, Dr. Soulsby noted that Mr. Plantz was doing satisfactory after surgery but reinjured his shoulder in April while shutting a shipping container door. Dr. Soulsby found that the MRI showed partial thickness tearing in the rotator cuff. He opined that the tear could potentially heal without surgery. He recommended physical therapy. On July 18, 2017, Dr. Soulsby noted that Mr. Plantz stated physical therapy was not helpful. Dr. Soulsby stated that the partial tear could be worse than seen on MRI. He opined that if surgery was necessary, it would be difficult to tell which injury the surgery should be covered under. He advised continuing physical therapy and recommended an independent medical evaluation.

Walid Azzo, Ph.D., M.D., performed a record review on September 5, 2017, in which he reviewed the April 25, 2017, MRI. He found a partial tear of the supraspinatus tendon superimposed on rotator cuff tendinopathy. He also found acromioclavicular joint arthrosis secondary to degenerative joint disease. Dr. Azzo opined that the April 17, 2017, injury caused upper cervical and thoracic joint sprains. He found that the injury was not related to any of the preexisting conditions seen on the MRI. Dr. Azzo concluded that Mr. Plantz had reached maximum medical improvement and could return to work with no restrictions for his April 17, 2017, injury.

3

Dr. Azzo performed a second record review on September 18, 2017, in which he stated that he compared the April 17, 2017, and April 25, 2017, left shoulder MRIs.[2] Dr. Azzo stated that the April 17, 2017, MRI showed a likely partial tear of the supraspinatus tendon superimposed on rotator cuff tendinopathy. There was also a suspected biceps tendon disruption or displacement with moderate degenerative changes of the acromioclavicular joint. Dr. Azzo found that the April 25, 2017, MRI showed no complete rotator cuff tear and acromioclavicular joint arthrosis secondary to degenerative joint disease. Dr. Azzo opined that there were no new changes between the MRIs. Dr. Azzo again opined that the work-related April 17, 2017, injury resulted in cervical and thoracic sprains only. Mr. Plantz had reached maximum medical improvement and could return to work with no restrictions.

Dr. Soulsby evaluated Mr. Plantz on September 26, 2017, and determined that he had not seen much improvement following his left shoulder surgery a year prior. Dr. Soulsby disagreed with Dr. Azzo's opinions. He found that the April 25, 2017, MRI showed a partial thickness tear of the rotator cuff while the original injury on September 3, 2015, resulted in impingement syndrome, bursitis, and a biceps injury, which were surgically treated. Dr. Soulsby opined that the impingement had gradually caused a rotator cuff tear, and therefore, Mr. Plantz's current condition is a continuation of his original injury. He recommended arthroscopic evaluation of the left shoulder and requested authorization for the procedure. On October 17, 2017, Mr. Plantz requested to be returned to full duty, which Dr. Soulsby allowed. On November 21, 2017, it was noted that Mr. Plantz was working but was avoiding lifting. The claims administrator denied a left shoulder arthroscopic rotator cuff repair on December 7, 2017.

Mr. Plantz testified in a hearing before the Office of Judges on December 7, 2017, that he first injured his left shoulder on September 3, 2015, and then reinjured it on April 17, 2017. After the first injury, Mr. Plantz underwent surgery and then returned to work in December of 2016. Mr. Plantz stated that on April 17, 2017, he was trying to close a container door when he felt a pop in his shoulder followed by immediate pain. Prior to that day, he was capable of performing his job duties without restriction. Mr. Plantz had an MRI on April 25, 2017, and was told that he had a biceps tear and a partial rotator cuff tear. This was the only MRI performed in the claim. Mr. Plantz testified that he had an x-ray on April 17, 2017, which Dr. Azzo mistakenly believed was an MRI. Mr. Plantz stated that he returned to full duty work in October of 2017 because his bills were piling up. He testified that he is extremely careful in his actions while at work to avoid further injuring his shoulder. He also stated that he has to take pain medication due to severe pain. Mr. Plantz testified that after his first shoulder injury and subsequent surgery, he was able to return to work with no restrictions. After the April 17, 2017, shoulder injury, however, he had more pain and muscle weakness and was unable to fully perform his job duties.

In a December 19, 2017, Order, the Office of Judges reversed a claims administrator decision denying treatment and closing the claim for temporary total disability benefits. It stated that temporary total disability benefits should be paid until October 18, 2017, and that Mr. Plantz

---

[2] There is no indication in the record that a left shoulder MRI was performed on April 17, 2017. The only diagnostic testing performed that day was a left shoulder x-ray. It is unclear to which diagnostic testing Dr. Azzo refers.

was not at maximum medical improvement. On January 11, 2018, Mr. Plantz was treated by Dr. Soulsby who found that he had seen no improvement in his rotator cuff tear. Dr. Soulsby stated that Mr. Plantz needed a rotator cuff repair. The claims administrator denied a reopening of the claim for temporary total disability benefits on February 23, 2018.

Dr. Soulsby testified in an April 19, 2018, deposition that he treated Mr. Plantz for both of his shoulder injuries. He performed arthroscopic acromioplasty on August 17, 2016, for the first work-related injury. He released Mr. Plantz to return to work after surgery. Mr. Plantz returned for treatment on March 9, 2017, after an independent medical evaluation and reported that he was still having pain in his shoulders as well as a popping sensation. Dr. Soulsby next treated Mr. Plantz on April 27, 2017. Dr. Soulsby stated that he was unaware if Mr. Plantz filed a separate claim for the second injury. Dr. Soulsby testified that his current problems are more related to the first shoulder injury and the impingement disease that it caused. However, he also stated that there were objective findings that indicate new damage had been done to the left shoulder, likely from the April 17, 2017, injury. He noted that he saw Mr. Planz in March of 2017 for persistent symptoms that could have been the beginning of a rotator cuff tear. He opined that the April 17, 2017, injury likely extended the rotator cuff tear. He stated that the April 17, 2017, injury was superimposed on the prior injury and it was impossible to separate the two. It was more like an ongoing continuum of a shoulder problem. Dr. Soulsby disagreed with Dr. Azzo's finding that Mr. Plantz merely sprained his cervical and thoracic spines on April 17, 2017.

In its May 25, 2018, Order, the Office of Judges reversed the December 7, 2017, claims administrator decision and authorized a left shoulder rotator cuff repair. The Office of Judges also affirmed the February 23, 2018, claims administrator decision denying temporary total disability benefits as the benefits were requested prematurely.

Regarding the requested medical treatment, the Office of Judges found that Mr. Plantz suffered his first left shoulder injury on September 3, 2015, and underwent an MRI on January 13, 2016, that showed no rotator cuff tear. He underwent left shoulder surgery on August 17, 2016. Dr. Soulsby performed the surgery and noted that while there were minor degenerative changes, there was no rotator cuff tear present. Mr. Plantz returned to full duty work following the surgery. It was determined on February 6, 2016, by Dr. Murphy that he had reached maximum medical improvement. Her diagnosis was biceps tendonitis, partial tear of the tendon of the long head of the left biceps muscle and impingement syndrome. She did not diagnose a rotator cuff tear. Though Mr. Plantz reported some pain to Dr. Soulsby in March of 2017, the Office of Judges found that it did not prevent him from performing his physically demanding job duties.

On April 17, 2017, Mr. Plantz suffered a second compensable left shoulder injury. He was closing a container door when he heard a pop and felt severe left shoulder pain. An MRI was performed on April 25, 2017, and showed a partial rotator cuff tear. Mr. Plantz again sought treatment from Dr. Soulsby, who recommended surgery. Dr. Soulsby stated in his treatment notes and deposition that it was difficult to identify a single event as the cause of the rotator cuff injury and need for surgery. He stated that the first injury, the resulting impingement syndrome, and the second injury were all part of a continuum of shoulder problems. He testified that Mr. Plantz developed impingement syndrome, as a result of his first compensable injury, which makes him

5

more susceptible to rotator cuff injuries. However, the newly injured area is the supraspinatus tendon, which was not injured in the first claim. The Office of Judges concluded that Mr. Plantz suffered an isolated, fortuitous event on April 17, 2017, which caused a second shoulder injury. As the evidence does not show a rotator cuff injury prior to that date, the Office of Judges concluded that it resulted from the April 17, 2017, injury. It noted that though the first compensable injury may have made Mr. Plantz more susceptible to a rotator cuff tear, the rotator cuff was not injured until his April 17, 2017, injury. Therefore, the Office of Judges authorized the requested left shoulder rotator cuff repair surgery for the April 17, 2017, claim.

Regarding temporary total disability benefits, the Office of Judges determined that Mr. Plantz requested to be released to return to work in October of 2017 because his bills were piling up. He continued to work while awaiting authorization for left shoulder surgery. The Office of Judges found that the request for temporary total disability benefits was made prematurely as Mr. Plantz has not missed work and therefore does not currently require wage replacement benefits. The Office of Judges stated that when he undergoes left shoulder surgery, he can again apply for temporary total disability benefits. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on January 2, 2019.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Pursuant to West Virginia Code § 23-4-1 (2019), employees who receive injuries in the course of and as a result of their covered employment are entitled to benefits. For an injury to be compensable it must be a personal injury that was received in the course of employment, and it must have resulted from that employment. *Barnett v. State Workmen's Compensation Commissioner*, 153 W.Va. 796, 172 S.E.2d 698 (1970). The Office of Judges determined in this case that a formal request for the addition of rotator cuff tear to the April 17, 2017, claim was not made; however, in a December of 2017 decision, the Office of Judges ordered the claims administrator to rule on the issue of compensability of the rotator cuff tear. The claims administrator failed to do so but did deny the request for rotator cuff surgery. The Office of Judges found that the decision amounted to a denial of the addition of rotator cuff tear to the claim. As the issue was thoroughly argued before the Office of Judges, it was determined that it was unnecessary to remand the claim for a ruling on compensability, which would further delay treatment. The Office of Judges was correct to find that the rotator cuff tear should be added to the April 17, 2017, claim. Though Mr. Plantz had a prior left shoulder injury, there was no evidence of a rotator cuff tear seen on MRI or during his first left shoulder surgery. Additionally, though he had some residual pain, he was capable of fully performing his work duties prior to the April 17, 2017, injury. After the second injury, Mr. Plantz reported that he felt immediate pain and was unable to properly use his left shoulder from that time forward. Additionally, the MRI performed after the April 17, 2017, surgery clearly showed a rotator cuff tear that was not previously present. Therefore, while the first shoulder injury may have made Mr. Plantz more susceptible to a rotator cuff tear, the second injury resulted in the discrete new injury of a rotator cuff tear.

Pursuant to West Virginia Code § 23-4-1(a) (2019), workers' compensation benefits shall be provided to those employees who have received personal injuries in the course of and as a result of their covered employment. West Virginia Code § 23-4-3(a)(1) (2019) provides that the claims administrator must provide medically related and reasonably required sums for healthcare services,

rehabilitation services, durable medical and other goods, and other supplies. As the left shoulder rotator cuff tear was properly added to the April 17, 2017, claim, the request for rotator cuff repair surgery was properly authorized.

Regarding the issue of temporary total disability benefits, West Virginia Code § 23-4-1c (2019) provides that an injured worker is entitled to temporary total disability benefits for the period in which they are unable to work. The claimant must submit evidence that he or she is unable to return to employment as a result of the compensable injury. In this case, Mr. Plantz returned to work following his compensable April 17, 2017, injury until such time that surgery could be authorized. Because he has not missed any days of work due to the injury, the Office of Judges was correct to find that temporary total disability benefits were requested prematurely.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the Board of Review's findings, reasoning and conclusions, there is insufficient support to sustain the decision. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: December 6, 2019**


**CONCURRED IN BY:**
Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison